499 S.E.2d 313

**MARY ANN McG. (formerly P.), Appellant,**

v.

**WILLIAM R. P., Appellee.**

**No. 24000.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 1997.

Decided Dec. 8, 1997.

Mary M. Downey, Charleston, for Appellant.

William R. P., Charleston, Pro Se.

## PER CURIAM:[1]

█ In this sequel to this Court's opinion in *Mary Ann P. v. William R. P., Jr.,* 197 W.Va. 1, 475 S.E.2d 1 (1996), the appellant, Mary Ann McG. (formerly P.), who will hereafter be referred to as Mary Ann P., claims that the Circuit Court of Kanawha County erred in authorizing her former husband to resume child visitation when the court-nominated counselor certified that it was appropriate. She suggests that visitation should not take place until such time as the treating psychologist for the parties' children, Dr. Christina Arco, indicates visitation is in the children's best interest. The appellant also claims that the court erred in ordering that the parties engage in reconciliation counseling before her former husband completed individual psychological treatment for a domestic violence problem. After reviewing the questions presented and the documents filed in this case, the Court believes that the circuit court did, in effect, rule that child visitation and reconciliation counseling were not to occur until the individual psychological treatment of the appellant's husband for domestic violence was completed and that the court did not err in entering the order from which this appeal is taken. The judgment of the circuit court is, therefore, affirmed.

As is more fully discussed in *Mary Ann P. v. William R. P., Jr., Id.,* the appellant, Mary Ann P. and the appellee, William R. P., Jr., were married on March 9, 1985, and in the course of a stormy relationship involving mental and physical abuse on the part of William R. P., Jr., they had two boys, William Raphael P., III, and Mark P., born in 1985 and 1986. The record also shows that William R. P., Jr., left Mary Ann P. and that Mary Ann P. filed for divorce on July 8, 1988. The divorce was granted and Mary Ann P. was granted custody of the children, and William R. P., Jr., was granted visitation privileges.

After the parties divorced, William R. P., Jr., was charged with sexually abusing William Raphael P., III, and while this charge was pending, William R. P., Jr.'s, right of visitation with William Raphael P., III, and Mark P. was suspended. Subsequently, when it appeared that a criminal sexual abuse charge growing out of the alleged abuse of William Raphael P., III, would be dropped, hearings were held before a family law master on the question of whether visitation should resume. During those hearings Christina Arco, a psychologist who had been treating the children, testified that William Raphael P., III, who had been exposed to the physical and emotional violence in his parents' marriage, had fears and anxieties about his father and wished his father would die. Susan Barrows McQuade, Director of Social Services at Family Services of Kanawha Valley, echoed this and testified that she believed that the children's visitation with their father would potentially be detrimental and that it should not be forced. At the conclusion of the hearings, the family law master found that although there had been physical violence in the parties' marriage, there had been no sexual abuse of William Raphael P., III, as charged, and the criminal charge growing out of the alleged abuse had been dropped and concluded that William R. P., Jr.'s, right of visitation with the children be reinstated.

<hr />

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992) ("Per curiam opinions ... are used to decide only the specific case before the Court; everything in a per curiam opinion beyond the syllabus point is merely obiter dicta.... Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published per curiam opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a per curiam opinion.").

Mary Ann P. filed exceptions to the family law master's recommendation that visitation resume, and after various hearings, the circuit court, although it recognized that the childrens' attitude toward their father rendered "exercise of visitation virtually impossible," ruled that visitation could resume under professional supervision.

Mary Ann P. appealed circuit court's visitation ruling to this Court, and this Court, mindful of the evidence that the children, because of their exposure to their father's physical and emotional abuse of their mother, strongly objected to seeing their father, concluded in *Mary Ann P. v. William R. P., Jr., supra, Id.*, that the visitation should not resume immediately, but indicated that it was in the best interest of the children to attend counseling sessions with their father. Specifically, the Court stated:

> Based on the foregoing, we agree with the plaintiff [Mary Ann P.] that supervised visitation should not immediately resume. . . . The record is clear that forced visitation at this time would be detrimental to the children and futile on the defendant's behalf without professional intervention. In *Mary D. v. Watt,* 190 W.Va. [341] at 348, 438 S.E.2d [521] at 528, this Court held that a "family law master or circuit court may condition . . . supervised visitation upon the offending parent seeking treatment." On remand, the circuit court should address this issue. The circuit court should also consider whether it would be beneficial for the defendant and the children to attend counseling sessions together to help build a more positive relationship. "Clearly, counseling for the parties would materially promote the welfare of the children." *Patricia Ann S. [v. James Daniel S.],* ·190 W.Va. [6] at 14, 435 S.E.2d [6] at 14. The circuit court should also determine when supervised visitation should resume and set forth a specific visitation schedule that takes into account the best interest of the children and the defendant's interest in attaining a close relationship with his sons. *See Weber v. Weber,* 193 W.Va. 551, 457 S.E.2d 488 (1995); W.Va.Code, 48–2–15(b) (1993). On remand, the circuit court should determine if the parties can agree on a counseling or

therapy setting for these children and their father. If they cannot agree, then the circuit court should take any additional evidence needed and direct the participation in such counseling as a condition of the continuation of the plan· for restoring visitation.

197 W.Va. at 8, 475 S.E.2d at 8.

Subsequent to this Court's rendering its opinion, the circuit court held several additional hearings which culminated in the order from which the appellant now appeals. Ultimately the circuit court entered the order from which the appellant now appeals. That order contains two provisions which this Court believes are relevant to this proceeding. The first states:

> (1) That child visitation be suspended until defendant [William R. P., Jr.] produces for this Court reports which address that he has undergone psychological treatment therapy in respect to his previous domestic abuse problems.

The second states:

> (2) That the plaintiff, mother herein, the defendant, father herein and the two children herein shall submit to family reconciliation counseling and therapy as herein after nominated and set out.

> (3) That visitation, whether supervised or non supervised, should only commence when recommended by the psychologist reconciliator hereafter to be nominated, by written report.

> (4) It is **ORDERED** that the Department of Behavioral Medicine and Psychology, Charleston Area Medical Center headed by Dr. Pete Edelman is hereby nominated as the parent-child reconciliator therapist and counselor.

■ As previously indicated, in the present appeal the appellant asserts that the trial court erred in not terminating visitation until William R. P., Jr., has completed individual psychological treatment for the problems resulting in domestic abuse. She also claims that visitation should be resumed only when Christina Arco indicated that it was in the children's best interest and that the court

erred in ordering that reconciliation counseling be conducted.

 This Court has indicated that the determining factor in establishing child visitation is the welfare of the child involved. *Mary Ann P. v. William R. P., Jr., supra.* See also *Lufft v. Lufft,* 188 W.Va. 339, 424 S.E.2d 266 (1992), and *Ledsome v. Ledsome,* 171 W.Va. 602, 301 S.E.2d 475 (1983). Likewise, the Court has recognized that domestic abuse can potentially affect a child's welfare. As stated in Syllabus Point 2 of *Mary Ann P. v. William R. P., Jr., supra:*

> "Children are often physically assaulted or witness violence against one of their parents and may suffer deep and lasting emotional harm from victimization and from exposure to family violence; consequently, a family law master should take domestic violence into account[.]" Syl. pt. 1, in part, *Henry v. Johnson,* 192 W.Va. 82, 450 S.E.2d 779 (1994).

In the present case, as suggested in *Mary Ann P. v. William R. P., Jr., supra,* the domestic violence which occurred between the parties, Mary Ann P. and William R. P., Jr., was a major factor in the children's psychological problems and in their fear of their father; and it continues to have substantial potential impact on their future welfare and well being. As suggested in the earlier opinion in this case, under the aggravated circumstances of this case, the visitation of William R. P., Jr., with the children would be detrimental to the children until such time as the father's individual psychological problems are addressed. Nonetheless, as indicated in the previous opinion, the Court does affirm the circuit court's conclusion that supervised visitation should resume when William R. P., Jr.'s, domestic violence problems have been professionally addressed.

As this Court reads the circuit court's order in issue in the present case, the circuit court has recognized that William R. P., Jr., must undergo and complete professional treatment for the problems giving rise to the prior domestic violence before child visitation may be resumed. The circuit court specifically ordered that child visitation be suspended until William R. P., Jr., "has undergone psychological treatment therapy in respect to his previous domestic abuse problems." It also appears that the court recognized that family reconciliation counseling and therapy should occur only after the psychological treatment of William R. P., Jr., is completed.

This Court cannot conclude that the circuit court's order is inconsistent with this Court's prior rulings in the case or that the circuit court erred in entering its order. Although the circuit court did not make the commencement of visitation contingent upon Christina Arco's certification that it was appropriate for the children, the court did provide: "That visitation ... should only commence when recommended by the psychologist reconciliator hereinafter to be nominated, by written report." In doing this, the circuit court did not err. The Court is, therefore, of the view that the order of the Circuit Court of Kanawha County should be affirmed.

As just stated, the Court has reached its conclusion in this case solely upon its reading of the circuit court's order which indicates that visitation and reconciliation counseling are not to begin until the psychological treatment of William R. P., Jr., is completed. The Court believes that any interpretation of the order which would allow the visitation or the reconciliation counseling to begin before the psychological treatment of William R. P., Jr., is completed would be contrary to the welfare and best interests of the infant children involved and would be contrary to the legal principles which govern the resolution of this case.

In light of the foregoing, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.